AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia



FILED

MAY 31 2019

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>4805 Noyes Avenue, Charleston,<br>Kanawha County, West Virginia | )<br>)<br>)  Case No. 2:19-mj-00047<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____West Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 841, 846, and 856 | Distribution of controlled substances, conspiracy to distribute controlled substances, and maintaining a drug-involved premises |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brian Roscoe, Special Agent DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 05/30/2019

*Judge's signature*

City and state: Charleston, West Virginia — Dwane L. Tinsley, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The residence is described as a two story, vinyl single-family house with the numbers 4805 in black to the left of the front door. The residence is located at U.S. Postal address of 4805 Noyes Avenue, Charleston, Kanawha County, West Virginia.

The premises to be searched shall also include the home, garage, any and all yards, outbuildings, storage areas, motor vehicles, recreational vehicles, motor homes, vessels, sheds, animal cages, and mailboxes assigned.

## ATTACHMENT B

1. Evidence of Drug Trafficking: Controlled substances, packaging materials, scales, cutting agents, presses, rubber bands, plastic bags, discarded wrappers, ledgers, bills of sale, owe sheets, lists of telephone numbers or other contact information, identifying information of customers and/or suppliers, documents related to the electronic transfer of money to include receipts for Western Union, MoneyGram and the like, prepaid debit cards, items associated with the use of controlled substances such as smoking devices, needles, items with suspected drug residue;

2. Evidence of Maintaining a Drug-Involved Premises: Utility bills, deeds, mortgage records, identification documents, and mail;

3. Evidence of Firearms Possession and Use: Firearms, ammunition, bills of sale, firearm boxes and packaging, receipts relative to the purchase firearms and ammunition, photographs of firearms, holsters, slings, ammunition belts, and body armor;

4. Fruits of Criminal Activity: United States currency, all documents showing the purchase, ownership, lease (as lessor or lessee), or sale of any asset, personal or real to include automobiles, boats, motorcycles or similar motorized conveyances to include deeds, titles, and bills of sale.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>4805 Noyes Avenue, Charleston, Kanawha County, West Virginia | Case No. 2:19-MJ-00047 |

**AFFIDAVIT IN SUPPORT OF**

**AN APPLICATION FOR A SEARCH WARRANT**

I, Brian Roscoe, being first duly sworn, do hereby depose and state as follows:

1. I make this affidavit in support of an application for a search warrant for a premises located at 4805 Noyes Avenue, Charleston, Kanawha County, West Virginia and within the Southern District of West Virginia (SUBJECT RESIDENCE). The SUBJECT RESIDENCE is a two story, vinyl single-family house. The house has the numbers 4805 in black to the left of the front door. Upon information and belief, the information herein establishes probable cause that the SUBJECT RESIDENCE is presently being used in furtherance of violations of 21 U.S.C. § 846 - Conspiracy to distribute controlled substances, 21 U.S.C. § 841(a)(1) - distribution and possession with intent to distribute controlled substances, and 21 U.S.C. § 856 - maintaining a drug-involved premises, and that evidence of those offenses is presently located at the SUBJECT RESIDENCE.

2. I am a Special Agent with the Drug Enforcement Administration ("DEA"). I have been employed as a Special Agent for approximately 19 years. I underwent 16 weeks of Basic Agent Training at the DEA Academy in Quantico, Virginia. I have conducted multiple investigations regarding street level distributors and complex conspiracy cases. I am experienced in the use of confidential informants and suspects regarding narcotics trafficking and the methods in which they are conducted. I am a "federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41 (a)(2)(C) and am authorized to apply for and execute federal search warrants.

3. During my tenure as a special Agent, I have successfully investigated, arrested, and prosecuted numerous violent offenders. I have particularized training in the investigation of drug trafficking. I have investigated numerous cases involving the use, consumption, sale and possession of illegal controlled substances. I routinely deal with the investigation of trafficking and possession of various controlled substances including marijuana, methamphetamine, heroin, fentanyl, and other street drugs. As a result, I am intimately familiar with the appearance, packaging, and paraphernalia associated with controlled substances. Moreover, I am equally familiar with the terminology, methods of communication, habits, techniques, organization, and practices of

drug traffickers and users. I have purchased controlled substances through cooperating witnesses in "controlled purchases" situations as well as personally purchasing controlled substances in hand-to-hand transactions. I have applied for and obtained numerous federal warrants to include search and seizure warrants, criminal complaints, and GPS tracking warrants.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents/officers and witnesses. This affidavit is intended to demonstrate that there is sufficient evidence to establish probable cause for this warrant and does not set forth all of my knowledge about this matter.

### PROBABLE CAUSE

5. In March 2018, I began an investigation of Everick Newborn ("Newborn"). I spoke with a confidential informant ("CI") and learned Newborn was selling substantial amounts of methamphetamine. The CI stated he/she could purchase methamphetamine from Newborn.

6. On or about May 31, 2018, I used the CI to purchase methamphetamine from Newborn. The CI purchased 4 ounces of methamphetamine from Newborn for two thousand eight hundred dollars ($2,800.00). The buy was video/audio recorded and took place in the Charleston area of Kanawha County, West Virginia.

3

After the controlled buy, I weighed and field tested the suspected methamphetamine and learned the substance weighed approximately 143 grams and field tested positive for the presence of methamphetamine.

7. On June 11, 2018, the CI arranged a controlled buy of 4 ounces of methamphetamine from Newborn for two thousand eight hundred dollars ($2,800.00). The buy was video/audio recorded and took place in Charleston area of Kanawha County, West Virginia. After the controlled buy, I weighed and field tested the suspected methamphetamine and learned the substance field tested positive for the presence of methamphetamine.

8. On May 29, 2019, the grand jury returned a two-count indictment against Newborn for distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1).

9. On May 30, 2019, I arrived at 4805 Noyes Avenue, Charleston, West Virginia to execute the arrest warrant against Newborn. We watched the residence and observed Newborn exit the residence in a gray shirt and red shorts. Newborn remained outside for several minutes and then returned inside the residence. At that time, we approached the door and knocked. No one answered the door, and we proceeded to breach the door. Newborn was found standing just inside the doorway. Newborn was detained at that time, and he was asked if there was anyone else in the home or

anything that might harm the officers. Newborn stated that he had pills and a gun in the house.

As we conducted a security sweep of the home, in the living room in plain view was a table that contained several hundred pills. The pills appeared to be oxycodone. The pills appeared to be in the process of being separated and packaged in smaller bundles. In addition to the suspected oxycodone, I observed digital scales, a yellow box of sandwich bags which were being used for packaging, and a large plastic bag that contained many of the smaller pre-packaged bags of the suspected oxycodone. Based on my training and experience, I believe this to be consistent with the distribution of controlled substances.

10. In connection with the transportation of drugs, I know that frequently drug traffickers maintain evidence of travel and other records required to arrange for the purchase and importation and distribution of such drugs, and keep tickets, notes, receipts, passports and other documents at their residence or the location where they conduct trafficking activities. I know that drug traffickers maintain records and other documents related to the possession, shipment, tracking and delivery of illegal controlled substances at the location where their drug trafficking activities occur. I know that indicia of occupancy, residency and ownership of premises, including but not limited to utility and telephone

bills, canceled envelopes, rental, purchase or lease agreements, identification documents and keys are often maintained at such drug trafficking locations.

11. Further, I know that drug traffickers frequently know others involved in the trafficking of illegal substances. Drug traffickers will frequently use and maintain address and/or telephone books, electronic organizers, telephone paging devices and papers, records or electronic data reflecting names, addresses, telephone numbers, pager numbers of co-conspirators, sources of drug supply and drug customers, and other items which provide evidence of the identities of others involved in such trafficking. I know that they also utilize ledgers, owe sheets, bills of sale, documents related to the electronic transfer of money, and other such documentation in relation to the sale and distribution of controlled substances.

12. I also know that drug traffickers frequently use aliases to conceal their identities, and often possess firearms and other weapons at the premises where they conduct drug trafficking. Persons who traffic in drugs often maintain at their residences and other locations where they conduct drug trafficking activities unsold or undistributed supplies of controlled substances and other drugs, drug paraphernalia including chemical dilutents, weighing scales, mixing bowls, flat waxed paper bags, spoons, which

6

are utilized in the weighing and packaging of controlled substances.

13. I am also aware from my own experience and training that it is a very common practice for drug traffickers to maintain firearms and ammunition in their residences and other locations where they conduct drug trafficking activities for the purpose of protecting their drug inventory and drug proceeds stored there, not only from law enforcement personnel but also other drug traffickers who may attempt to rob them. Firearms and ammunition have been recovered in a large majority of searches in the drug investigations in which I have been involved.

14. It is also a common practice for drug traffickers to maintain mobile or portable cellular telephones close-at-hand in order to facilitate their drug trafficking business. Such equipment permits traffickers to remain in close and nearly instantaneous communication with their customers and suppliers. Cellular telephones also typically have electronic memory capability within which frequently called telephone numbers can be stored and "speed-dialed". Moreover, in a number of other drug trafficking investigations, the electronic memories of such cellular telephones have been found to contain the contact telephone numbers of other persons identifiable as being involved in the drug trafficking activity under investigation.

## CONCLUSION

15. The above-stated information establishes probable cause exists that individuals are committing violations of 21 U.S.C. §§ 841(a)(1), 846, and 856 and that evidence of those offenses is currently located at SUBJECT PREMISES.

Further your Affiant sayeth naught.

Respectfully submitted,

_____
BRIAN ROSCOE
Special Agent
Drug Enforcement Agency

Sworn to me and subscribed in my presence this 30th day of May, 2019.

_____
DWANE L. TINSLEY
United States Magistrate Judge